UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JESSE MENDEZ,** | § | |
| **TDCJ No. 1560882,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-11-CA-895-XR** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER DENYING RELIEF

On October 26, 2011, Petitioner Jesse Mendez filed this federal habeas corpus action pursuant to 28 U.S.C. **§** 2254.  Petitioner challenges his September 2008 state conviction for aggravated robbery and fifty-five year sentence of imprisonment.  Doc. No. 2.  For the reasons set forth herein, Petitioner is entitled to neither federal habeas corpus relief nor a Certificate of Appealability from this Court.

## I. BACKGROUND

A Bexar County grand jury indicted Petitioner on April 18, 2006, on a single count of robbery.[1]  Petitioner's trial commenced on September 3, 2008.   The complainant, cab driver Ezequiel Lomas, testified that he was robbed by two assailants after picking them up during the early morning hours of October 31, 2005.  Lomas repeatedly emphasized throughout his trial testimony that he did not get a good look at either of his two assailants, and that he had been unable to definitively pick either a male or a female suspect from the photo arrays shown to him several

---

[1] Transcript of pleadings, motions, and other documents filed in Petitioner's state court proceeding (henceforth "Trial Transcript"), at p. 2.

months after the robbery.[2]  Lomas nevertheless acknowledged he had signed the Petitioner's photograph from the photo array of male suspects. He explained that he did so only because that photograph looked more like his male assailant than the other males depicted in the photo array.[3]

The prosecution then called Roxanne Herrera, who testified that she and Petitioner robbed Lomas on October 31, 2005.  In addition, a San Antonio Police ("SAPD") officer testified about his arrest of Roxanne Herrera and her voluntary post-arrest statement that she had been involved in Lomas' robbery the night before.[4]  A SAPD detective further testified that during an interview Herrera voluntarily indicated that Petitioner was also involved in the robbery.[5]

Petitioner presented no evidence at his trial.  The jury began and ended its deliberations on September 4, 2008, finding Petitioner guilty of robbery.[6]  During sentencing, Petitioner announced that he wished to take the stand.[7]  Both sides immediately rested and closed without further comment.[8]  The jury heard closing arguments and returned its punishment phase verdict on September 5, 2008, sentencing Petitioner to serve a 55-year term of incarceration.[9]

---

[2] *Id.,* at pp. 46, 59-61, 64-66, 74-77, 79, 81.

[3] *Id.*, at pp. 59-61, 74-77, 79, 81.

[4] S.F. Trial, Volume 3, testimony of David Nouhan, at pp. 179-90.

[5] S.F. Trial, Volume 3, testimony of Luis Tijerina, at pp. 220-36.

[6] S.F. Trial, Volume 4, at pp. 45-47; Trial Transcript, at pp. 194-207.

[7] S.F. Trial, Volume 5, at p. 107.

[8] *Id.*, at p. 108

[9] S.F. Trial, Volume 5, at pp. 130-32; Trial Transcript, at pp. 209-15.

Petitioner appealed his conviction and sentence.  In an unpublished opinion issued on December 30, 2009, the Texas Fourth Court of Appeals affirmed Petitioner's conviction.  On March 31, 2010, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. Petitioner next filed a state habeas corpus application on January 18, 2013.  On June 23, 2011, the state habeas trial court recommended denial of Petitioner's state habeas corpus application.  On October 12, 2011, the Texas Court of Criminal Appeals denied Petitioner's state habeas corpus application without written order. *Ex parte Jesse Mendez*, WR 68,885-01 (Tex. Crim. App. October 12, 2011).

Petitioner filed his original federal habeas corpus petition and a memorandum in support in this Court on October 26, 2011. Doc. Nos. 2 & 3.  Petitioner asserts several theories of how he was denied his Sixth Amendment right to effective assistance of counsel.  Specifically, Petitioner asserts that counsel was deficient for: (a) refusing to allow Petitioner to testify at trial regarding his alibi, (b) failing to move to suppress Lomas' in-court identification testimony, (c) failing to object to the trial court's suggestion that Petitioner stipulate that he was the male subject shown in the taxicab camera photographs, (d) failing to question witnesses regarding the identify of the male shown in the taxicab camera photographs, and (e) failing to request a lesser-included-offense instruction regarding the offense of theft.  In addition to his ineffective of assistance of counsel claim, Petitioner raises additional claims that: (1) he was denied his right to testify at trial, (2) Lomas' in-court identification was impermissibly suggestive, and (3) the admission of his probation officer's testimony violated Petitioner's right to cross-examine adverse witnesses. *Id.*

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 l.Ed.2d 334 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 10, 157 L.Ed.2d 263 (2003)("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established

federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Id.*

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Brown v. Payton*, 544 U.S. at 141, 125 S. Ct. at 1439; *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534-35, 156 L.Ed.2d 471 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33, 130 S. Ct. 665, 673, 175 L.Ed.2d 582 (2010). Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 2147, 158 L.Ed.2d 938 (2004).

The AEDPA also significantly restricts the scope of federal habeas review of state court findings of fact. Section 2254(d)(2) provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

In addition, § 2254(e)(1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro*

*v. Landrigan*, 550 U.S. at 473-74, 127 S. Ct. at 1939-40 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with clear and convincing evidence."). However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L.Ed.2d 931 (2003)("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.").

Finally, in the Fifth Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court, and not evaluate the overall quality of the state court's written opinion supporting its decision. *See Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010)(federal habeas review of a state court's adjudication involves review only of a state court's decision, not the written opinion explaining the decision), *cert. denied*, ___ U.S. ___, 132 S. Ct. 124, 181 L.Ed.2d 46 (2011); *St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006)(holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 550 U.S. 921 (2007);

## ANALYSIS

## A.   DENIAL OF PETITIONER'S RIGHT TO TESTIFY

Petitioner argues he was denied his constitutional right to testify when his trial counsel refused to permit him to take the stand at trial and threatened to withdraw if Petitioner insisted upon

doing so.[10]   This argument was rejected by the state habeas trial court.[11]   The Texas Court of Criminal Appeals subsequently denied state habeas corpus relief.  *Ex parte Jesse Mendez*, WR 68,885-01 (Tex. Crim. App. October 12, 2011).

A criminal defendant unquestionably possesses a constitutional right to testify on his or her own behalf. *Rock v. Arkansas*, 493 U.S. 44, 51, 107 S. Ct. 2704, 2708-09, 97 L.Ed.2d 37 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'"); *United States v. Flores-Martinez*, 677 F.3d 699, 708 (5th Cir.) ("It is well established that '[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so.'"), *cert. denied*, ___ U.S. ___, 133 S. Ct. 326, 184 L.Ed.2d 193 (2012).

The state habeas trial court found credible  the affidavit of Petitioner's trial counsel, which expressly denied that counsel prevented Petitioner from testifying at trial.  Under the AEDPA, a state court's credibility findings are factual determinations entitled to deference. *See Richards v.*

---

[10]  Petitioner's Original Petition, filed October 26, 2011, docket entry no. 2 (henceforth "Petition"), at pp. 7-8; Petitioner's Memorandum of Law in Support of Petition, filed October 26, 2011, docket entry no. 3 (henceforth "Memorandum"), at pp. 76-85; Petitioner's Reply to Answer, filed April 4, 2012, docket entry no. 16 (henceforth "Reply"), at pp. 10-16.

[11]  State Habeas Transcript, at p. 193.  The state habeas trial court quoted the following portion of McCrum's affidavit which it specifically found to be credible:
> It is untrue that I refused to allow Applicant to testify at trial.  In discussing the matter with him prior to trial, I advised him that he had multiple prior felony convictions which were inadmissible <u>unless</u> he took the stand.  Considering that Applicant could not provide any alibi evidence, the only thing to be gained by his testimony would be to personally state that he did not commit the offense.  When balanced against the harm of introducing his prior convictions, Applicant agreed with my recommendation to not testify.

*Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009) (holding a state habeas court's credibility findings are entitled to a presumption of correctness under §2254(e)(1).

The affidavit of Petitioner's attorney, Scott McCrum, was logical and consistent with the fundamental principles of criminal defense representation.  Petitioner had a lengthy criminal record which would have been admissible had Petitioner testified.   In addition, Petitioner furnished the state habeas court with two entirely different versions of what transpired before trial.  Initially, Petitioner argued that his trial counsel refused to even listen when Petitioner stated he wished to testify.[12]  In response to attorney McCrum's affidavit, however, Petitioner argued in a second pleading he had repeatedly informed McCrum that Petitioner's sister could be called to testify and would furnish Petitioner with an alibi for the time of the robbery.[13]  However, Petitioner has not provided either this Court or the state habeas court with an affidavit from his sister establishing she was available at the time of Petitioner's trial to furnish alibi testimony.  In addition, Petitioner failed to furnish the state habeas court with any affidavit from any third party who claimed to have witnessed McCrum's purported threat to withdraw.  The state habeas court's credibility finding regarding attorney McCrum's affidavit was reasonable in view of the evidence before that court. Petitioner has provided this Court with the same affidavit upon which he relied to support his claim before the state habeas court.  Under such circumstances, Petitioner has failed to furnish this Court

---

[12] State Habeas Transcript, at pp., 96-100.  The quoted passage appears at p. 97.
Petitioner's affidavit, signed January 18, 2011, is also attached to Petitioner's Memorandum herein as docket entry no. 3-1, at pp. 46-50. The passage quoted in the text above appears at p. 47. Petitioner's affidavit further explains he could have testified (1) at the time of the robbery, he was at his sister's house, (2) the day before the robbery, he encountered Roxanne Herrera and her boyfriend Mike and informed them they owed Petitioner money, and (3) and Herrera and Mike promised to pay Petitioner the next day. *Id.*, at pp. 48-49.

[13] State Habeas Transcript, at pp. 183-84.

with "clear and convincing evidence" showing the state habeas court's credibility finding regarding

McCrum's affidavit was erroneous.

## B.   ERRONEOUS ADMISSION OF IN-COURT IDENTIFICATION

Petitioner argues that the state trial court erroneously admitted in-court identification

testimony from the complaint, Ezequiel Lomas.[14] Petitioner presented the same claim in his state

habeas corpus application.[15]  The state habeas trial court found, as a matter of fact, that Lomas did

not identify Petitioner as the male who had robbed him.[16]   The Texas Court of Criminal Appeals

subsequently denied state habeas corpus relief.  *Ex parte Jesse Mendez*, WR 68,885-01 (Tex. Crim.

App. October 12, 2011). The Supreme Court has held that admissibility of an in-court identification

turns on several factors:

> These include the opportunity of the witness to view the
> criminal at the time of the crime, the witness' degree of
> attention, the accuracy of his prior description of the criminal,
> the level of certainty demonstrated at the confrontation, and
> the time between the crime and the confrontation.  Against
> these factors is to be weighed the corrupting effect of the
> suggestive identification itself.

*Manson v. Brathwaite*, 432 U.S. 98, 113-114, 97 S. Ct. 2243, 2252 - 2253, 53 L.Ed.2d 140
(1977).

The fundamental problem with this claim, as the state habeas court correctly found,  is that

Lomas did actually not identify Petitioner in court.  On the contrary,  Lomas repeatedly denied that

he could identify Petitioner as one of his assailants.[17]  Lomas' testimony that Petitioner looked like

---

[14] Petition, at pp. 13-15; Memorandum, at pp. 85-95; Reply, at pp. 17-21.

[15] State Habeas Transcript, at pp. 14-16, 74-86.

[16] State Habeas Transcript, at p. 193.

[17] *See* notes 3-4, *supra*, and accompanying text.

the male who robbed him did not constitute an in-court identification for purposes of the constitutional standard outlined above. Lomas qualified his testimony by pointing out he had signed the back of Petitioner's photographs only because Petitioner looked more like the male robber than the other men depicted in the same photo array. This Court finds the state habeas court's factual determination there was no in-court identification of Petitioner by Lomas to be fully supported by the record from Petitioner's trial.

## C.   DENIAL OF RIGHT TO EFFECTIVE CROSS-EXAMINATION

Petitioner next argues that his Confrontation Clause right to effectively confront adverse witnesses was violated when the state trial court admitted the testimony of prosecution witness Tambra Satterfield over defense counsel's objections because, based on Satterfield's status as Petitioner's parole officer, Petitioner was unable to effectively cross-examine Satterfield.[18] Petitioner presented the same basic claim on direct appeal.[19] The Texas Fourth Court of Appeals rejected this argument on the merits, concluding the trial court had not restricted the ability of Petitioner's trial counsel to cross-examine Satterfield. *Mendez v. State*, 04-08-00728-CR, 2009 WL 5150071, *5-7 (Tex. App. - San Antonio, December 30, 2009), *pet. ref'd*. Petitioner re-urged the same argument in his *pro se* petition for discretionary review. The Texas Court of Criminal Appeals refused discretionary review on March 31, 2010.

The Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose testimonial infirmities, such as forgetfulness, confusion, or evasion, through cross-examination, thereby calling to the attention of the fact-finder the reasons

---

[18] Petition, at p. 4; Memorandum, at pp. 96-109; Reply, at 30-32.

[19] Appellant's Opening Brief, at pp. 32-40.

for giving scant weight to the witness' testimony. *Maryland v. Craig*, 497 U.S. 836, 847, 110 S. Ct. 3157, 3164, 111 L.Ed.2d 666 (1990); *Delaware v. Fensterer*, 474 U.S. 15, 22, 106 S. Ct. 292, 295, 98 L.Ed,.2d 15 (1985).  The Confrontation Clause guarantees a criminal defendant an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. at 20, 106 S. Ct. at 294; *United States v. Hale*, 685 F.3d 522, 538 (5th Cir.), *cert. denied*, ___ U.S. ___, 133 S. Ct. 559, 184 L.Ed.2d 343 (2012).

Petitioner's trial counsel argued for the exclusion of Satterfield's testimony, in part, on the ground he could not fully cross-examine her without risking revealing that Satterfield was Petitioner's parole officer which, in turn, would have revealed to the jury Petitioner's prior criminal convictions for burglary of a habitation and burglary of a vehicle.[20]  The state trial court overruled Petitioner's objection and permitted the prosecution to call Satterfield as a witness.  Thereafter, Petitioner's trial counsel conducted a very brief cross-examination of Satterfield.[21]  Petitioner complains in his pleadings before this Court that the state trial court should have excluded Satterfield as a witness and required the prosecution to call someone else who could identify Petitioner as the male shown in the taxicab camera's photographs of Lomas' assailants.

There are several problems with Petitioner's arguments.  First, like the Texas Fourth Court of Appeals, this Court has identified no legal authority mandating the exclusion of a prosecution witness' testimony simply because the defendant's ability to cross-examine that witness might be

---

[20] S.F. Trial, Volume 3, at pp. 152-64.

[21] S.F. Trial, Volume 3, testimony of Tambra Satterfield, at pp. 167-68.

circumscribed tactically by that witness' knowledge of embarrassing or even potentially harmful information about the defendant.

Second, the prosecution was not required to furnish testimony from an individual who could identify Petitioner, but that was also unaware of his prior convictions. Petitioner here essentially seeks to establish a new rule of constitutional criminal procedure i.e., one which would exclude any potential prosecution witness for whom the defense's cross-examination might prove problematic. This is foreclosed in the context of this federal habeas corpus proceeding by *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). Under *Teague*, federal courts are generally barred from applying new constitutional rules of criminal procedure retroactively on collateral review. *Caspari v. Bohlen*, 510 U.S. 383, 389-90, 114 S. Ct. 948, 953, 127 L.Ed.2d 236 (1994).

Petitioner had a full and fair opportunity to cross-examine Satterfield. The fact Petitioner's trial counsel chose for tactical reasons not to more fully explore the precise nature of Satterfield's relationship with Petitioner did not violate the Confrontation Clause.

## D.    INEFFECTIVE ASSISTANCE BY TRIAL COUNSEL

Petitioner argues that his trial counsel rendered ineffective assistance by: (1) refusing to permit Petitioner to testify at trial, (2) failing to move to suppress Lomas' in-court identification testimony, (3) failing to object to the trial court's suggestion Petitioner could stipulate to being the suspect shown in the taxicab photographs, (4) failing to question unidentified witnesses as to whether Petitioner was the male shown in the taxicab photographs, and (5) failing to request a lesser-included-offense instruction on theft.[22]

---

[22] Petition, at pp. 4, 6-13; Memorandum, at pp. 29-76; Reply, at pp. 3-27.

Petitioner presented the first four of these claims in his state habeas corpus application.[23] As noted herein, the state habeas trial court found the affidavit of Petitioner's trial counsel credible and concluded Petitioner's ineffective assistance claims did not warrant relief.[24]  The Texas Court of Criminal Appeals subsequently affirmed.  *Ex parte Jesse Mendez*, WR 68,885-01 (Tex. Crim. App. October 12, 2011).  Petitioner's complaint regarding trial counsel's failure to request a lesser-included-offense instruction on theft was not, however, addressed by the state habeas court.

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).  In so doing, a convicted defendant must overcome a strong presumption that the conduct of trial counsel fell within a wide range of reasonable

---

[23] State Habeas Transcript, at pp. 6-10, 26-67.

[24] *Id.*, at p. 194.

13

professional assistance. *Strickland v. Washington*, 466 U.S. at 687-91, 104 S. Ct. at 2064-66. Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins v. Smith*, 539 U.S. at 523, 123 S. Ct. at 2536.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S. Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*

With respect to Petitioner's claims that the state courts have addressed on the merits, the issue before this Court is whether the Texas Court of Criminal Appeals could  have reasonably concluded that the claims failed to satisfy either prong of the *Strickland* analysis.  *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004).  In making this determination, this Court must consider the underlying *Strickland* standard. *Id.*  In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo*. *See Porter v. McCollum*, 558 U.S. at 39, 130 S. Ct. at 452 (holding *de novo* review of the allegedly deficient performance of Petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis).  A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009), *cert. denied*, 558 U.S. 839 (2009).

1.    <u>Refusal to Permit Petitioner to Testify</u>

14

Petitioner argues that his trial counsel refused to permit Petitioner to testify at trial.  As explained above, the state habeas trial court found the affidavit of Petitioner's trial counsel, which categorically denied Petitioner's allegation on this point, to be credible.  This factual finding was reasonable in view of the conflicting evidence before the court, which consisted of internally inconsistent statements from Petitioner about a purported desire to testify as to an alibi.  The burden of proof in a habeas corpus proceeding is on the petitioner.  Petitioner has failed to present this Court with clear and convincing evidence showing the state habeas court's factual finding (rejecting the factual premise for Petitioner's claim) was erroneous.  Thus, under the AEDPA, Petitioner has failed to establish the performance of his trial counsel fell below an objective level of reasonableness.

Based upon the affidavit of trial counsel McCrum, the decision not to have Petitioner testify at either phase of trial was one made after consultation and was consistent with an objectively reasonable trial strategy.  Petitioner has presented this Court with no evidence showing the tactical decision by attorney McCrum not to call Petitioner to testify at the guilt-innocence phase of trial fell below an objective level of reasonableness.  Under such circumstances, Petitioner has failed to demonstrate that counsel's performance was constitutionally deficient.

Moreover, with respect to the prejudice prong, there is no evidence showing that there was credible alibi testimony available at the time of Petitioner's trial.  Consequently, this Court concludes there is no reasonable probability that, but for the failure of Petitioner's trial counsel to call Petitioner to testify, the outcome of either phase of Petitioner's trial would have been any different.

2.    <u>Failure to Move to Suppress Lomas' In-Court Identification Testimony</u>

15

Petitioner next contends that his trial counsel failed to move to suppress Lomas' testimony that Petitioner contends amounted to an in-court identification. This Court has independently reviewed the record from Petitioner's trial and agrees with the state habeas court's factual finding that Lomas never actually identified Petitioner at trial. In fact, Lomas made it abundantly clear he had only a very brief, very poor, view of his male assailant and he was unable to identify Petitioner as his assailant.[25] Here, Petitioner is actually complaining his trial counsel failed to seek to exclude testimony which could possibly have raised a genuine doubt as to Petitioner's guilt. Lomas' trial testimony was actually the most favorable testimony given for Petitioner's side. Thus, any attempt by Petitioner's trial counsel to exclude the trial testimony of Lomas would have been antithetical to the efforts of Petitioner's trial counsel to obtain an acquittal.

Moreover, Petitioner has identified no potentially viable legal authority supporting the exclusion of Lomas' trial testimony. Trial counsel does not render deficient performance by failing to make frivolous or meritless objections or motions. *See Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir.) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance."), *cert. denied*, ___ U.S. ___, 133 S. Ct. 179, 184 L.Ed.2d 90 (2012). This Court independently concludes the failure of Petitioner's trial counsel to move to suppress Lomas' trial testimony did not cause the performance of said counsel to fall below an objective level of reasonableness.

In addition, Petitioner was not prejudiced by the failure of his trial counsel to move to suppress Lomas' trial testimony. First, Lomas' testimony did not identify Petitioner as the male assailant who participated in the robbery. Second, there was no legal basis for excluding Lomas'

---

[25] *See* notes 3-4, *supra*, and accompanying text.

trial testimony.  Regardless of how "impermissibly suggestive" the photo array shown to Lomas by police might have been, the fact is Lomas made clear he could not definitively identify any of the six male faces in that array as his male assailant.  The failure of trial counsel to make a frivolous or meritless objection or motion does not satisfy the "prejudice" prong of *Strickland* analysis. *See Paredes v. Quarterman*, 574 F.3d at 291 n.13 (failure to raise a meritless argument cannot be the basis for an ineffective assistance claim because the result of the proceeding would not have been different had the attorney raised the issue).  This Court independently concludes there is no reasonable probability that, but for the failure of Petitioner's trial counsel to move to exclude the testimony of Lomas, the outcome of either phase of Petitioner's trial would have been any different.

    3.    Failure to Object to Trial Court's Observation

    During a hearing held outside the jury's presence to address Petitioner's objections to Satterfield's testimony, Petitioner's trial counsel argued it would be extremely difficult to adequately cross-examine Satterfield regarding her potential bias against Petitioner because doing so might lead to disclosure of Satterfield's position as Petitioner's parole officer.[26]  Near the end of that hearing, the state trial court observed that Petitioner had the option of stipulating to the fact the taxicab photographs taken by Lomas' security camera showed Petitioner, thus obviating the prosecution's need for Satterfield's trial testimony.[27]  Petitioner argues his trial counsel should have "objected" to the trial court's observation made outside the jury's presence.

    Petitioner's trial counsel stated in his affidavit that he did not "object" to the trial court's comments about stipulation as a possible means of avoiding having Satterfield testify because the

---

[26] S.F. Trial, Volume 152-64.

[27] *Id.*, at pp. 160, 163.

comment had no impact on the outcome of trial.  Petitioner has not alleged any facts, much less furnished this Court with any evidence, showing said counsel's view of the trial court's comment was objectively unreasonable.  Nor has Petitioner identified any potentially viable basis for an "objection" to the trial court's observation.  In fact, Petitioner has not identified any legal authority suggesting the trial court's observations regarding the potential impact of such a stipulation were an erroneous interpretation of applicable state evidentiary rules.  The failure of Petitioner's trial counsel to make a frivolous and meritless objection did not cause the performance of said counsel to fall below an objective level of reasonableness. *See Clark v. Thaler*, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance").  This Court independently concludes the failure of Petitioner's trial counsel to move to suppress Lomas' trial testimony did not cause the performance of said counsel to fall below an objective level of reasonableness.

Moreover, the Court finds there is no reasonable probability that, but for the failure of Petitioner's trial counsel to object to the trial court's comments regarding a possible stipulation, made outside the jury's presence, the outcome of either phase of Petitioner's trial would have been different.  The trial court's comments apparently accurately reflected Texas evidentiary rules and were not heard by the jury.  Petitioner also fails to identify any potentially viable legal basis for an objection to the trial court's comments suggesting stipulation as a possible alternative to Satterfield's trial testimony.  Under such circumstances, Petitioner does not allege any facts showing his the trial court's comment could possibly have impacted the jury's verdict at either phase of trial. *See Paredes v. Quarterman*, 574 F.3d at 291 n.13 (failure to raise a meritless argument cannot be the basis for an ineffective assistance claim because the result of the proceeding

18

would not have been different had the attorney raised the issue).  There is no reasonable probability

that, but for the failure of Petitioner's trial counsel to object to the trial court's comments about

stipulation, the outcome of either phase of Petitioner's trial would have been any different.

        4.      <u>Failure to "Question" Whether the Person in the Security Photographs was</u>
<u>Petitioner</u>

Petitioner next argues that his trial counsel failed to "question whether the person allegedly

depicted on [sic] the photographs was me."  At trial, counsel: (1) questioned prosecution witnesses

Lomas and Herrera on cross-examination regarding whether the photographs in question showed

Petitioner and Herrera, and (2) cross-examined Satterfield regarding how familiar she was with

Petitioner's appearance at the time she first viewed the photographs and identified Petitioner as the

male suspect shown therein.[28]  Petitioner does not identify any additional questions his trial counsel

should have asked any of these witnesses.  Conclusory assertions of ineffective assistance, such as

this one, do not warrant habeas corpus relief. *See Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir.)

(conclusory statements regarding the content of uncalled witnesses' testimony insufficient to

demonstrate ineffective assistance), *cert. denied*, ___ U.S. ___, 131 S. Ct. 265, 178 L.Ed.2d 175

(2010).

In addition, Petitioner does not allege any specific facts showing that a more thorough or

more aggressive cross-examination of any prosecution witness would have produced any beneficial

testimony or admissions from those witnesses.  Thus, Petitioner has failed to show that, but for the

failure of his trial counsel to more thoroughly cross-examine any prosecution witness, there is a

---

[28] S.F. Trial, Volume 3, testimony of Ezequiel Lomas, at pp. 60-75, 78-81; testimony of
Roxanne Herrera, at pp. 121-46, 149-51; testimony of Tambra Satterfield, at pp. 167-68.

reasonable probability the outcome of either phase of Petitioner's trial would have been any different. Consequently, Petitioner has established neither the deficiency nor prejudice prongs of *Strickland* with respect to this theory.

### 5. Failure to Request Lesser-Included-Offense Instruction

Finally, Petitioner argues that his trial counsel should have requested a lesser-included-offense instruction on theft.[29] Because the state courts did not address this particular ineffective assistance complaint, this Court's review of this claim under both prongs of the *Strickland* test is *de novo*. *See Porter v. McCollum*, 558 U.S. 30, 39, 130 S. Ct. 447, 452, 175 L.Ed.2d 398 (2009)(holding *de novo* review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis).

"Under Texas law, there is a two-step test to determine whether a lesser included offense instruction should be given: first, the lesser included offense must be within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553,

---

[29] As explained above, Petitioner presented this complaint about the performance of his trial counsel for the first time in a pleading styled "Motion to Supplement the Facts," filed March 9, 2011 after the state filed its response to Petitioner's original state habeas corpus application. State Habeas Transcript, at pp. 176-79. The state habeas trial court did not mention this complaint in its Order addressing Petitioner's state habeas corpus application. State Habeas Transcript, at pp. 192-95. Because this complaint lacks any arguable merit, it is unnecessary for this Court to determine either (1) whether Petitioner failed to "fairly present" this particular ineffective assistance complaint to the state courts or (2) whether Petitioner procedurally defaulted thereby.

This Court is authorized to deny relief on the merits on even unexhausted claims. *Pondexter v. Quarterman*, 537 F.3d 511, 527 (5th Cir.), *cert. denied*, 555 U.S. 1219 (2008); *Moreno v. Dretke*, 450 F.3d 158, 166 (5th Cir. 2006), *cert. denied*, 549 U.S. 1120 (2007); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005), *cert. denied*, 549 U.S. 838 (2006); *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005)("[C]onsistent with its goal of providing for the speedy resolution of federal petitions, AEDPA provides that applications may be denied on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'"); 28 U.S.C. § 2254(b)(2).

568-69 (5th Cir. 2009); *Alexander v. McCotter*, 775 F.2d 595, 600 (5th Cir. 1985); *Johnson v. State*, 623 S.W.2d 654, 657 (Tex. Crim. App. 1981). Furthermore, a Texas criminal defendant is entitled to a lesser-included offense instruction under applicable state law only when there is affirmative evidence in the record which both raises the lesser-included offense and negates or refutes an element of the greater offense. *Hanna v. State*, ___ S.W.3d ___, ___, 2014 WL 1375456 (Tex. Crim. April 9, 2014); *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

Section 29.02(a) of the Texas Penal Code, defines the offense of "robbery" as follows: "(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *United States v. Davis*, 487 F.3d 282, 285 (5th Cir. 2007); § 29.02(a), Tex. Pen. Code Ann. (Vernon 2011).[30]

Petitioner argues that he was entitled to a lesser-included offense instruction on theft because there was evidence the gun he used to rob Lomas was actually a BB gun and not, therefore, a deadly weapon. Petitioner argues further the jury could reasonably have concluded Petitioner did not employ a deadly weapon during the course of the robbery. As is evident from the authorities cited above, unlike the offense of aggravated robbery defined by § 29.03 of the Texas Penal Code, use or exhibition of a deadly weapon is not an essential element of robbery, as defined by applicable Texas law. *See Howard v. State*, 306 S.W.3d 407, 410-11 (Tex. App. - Texarkana 2010) ("To

---

[30] The predecessor to the current Texas statutory definition of the offense of robbery furnished essentially the same definition: "Robbery, by statutory definition, is essentially 'theft plus'—namely, it is theft accomplished by the use of physical force or threats of bodily injury." *Mann v. Scott*, 41 F.3d 968, 977 (5th Cir. 1994)(*citing* former Texas Penal Code Ann. § 29.01(1) (West 1994)), *cert. denied*, 514 U.S. 1117 (1995).

commit robbery, the accused need not expressly threaten another or display a weapon."), *aff'd.* 333 S.W.3d 137 (Tex. Crim. App. 2011) .   Rather, the focus of a criminal charge of robbery is on whether a theft was accompanied by either (1) assaultive conduct which caused bodily injury to another or (2) threats or actions which placed the victim in fear of imminent bodily injury or death. *See Green v. State*, 567 S.W.2d 211, 213 (Tex. Crim. App. 1978).   It was alleged at trial that: (1) both Petitioner and Herrera physically assaulted Lomas, (2) Petitioner pressed an object which appeared to be a gun against Lomas' temple, (3) both Petitioner and Herrera threatened Lomas, (4) Herrera rifled through Lomas' pockets and took money therefrom while Petitioner held Lomas' hands, and (5) Petitioner shoved Lomas out of a moving vehicle.   Thus, all the essential elements of the offense of robbery were satisfied.   As a result, Petitioner was not entitled under Texas law to a jury instruction on the lesser-included offense of theft.   This Court concludes *de novo* the failure of Petitioner's trial counsel to request  such an instruction did not cause the performance of said counsel to fall below an objective level of reasonableness.

Likewise, because Petitioner was not entitled to a lesser-included offense instruction on theft, the failure of Petitioner's trial counsel to request such an instruction did not prejudice Petitioner within the meaning of *Strickland*.   *See Paredes v. Quarterman*, 574 F.3d at 291 n.13. This Court concludes *de novo* there is no reasonable probability that, but for the failure of Petitioner's trial counsel to request a lesser-included-offense instruction on theft, the outcome of either phase of Petitioner's trial would have been any different.

**E**. **REQUEST FOR EVIDENTIARY HEARING**

Petitioner requests an evidentiary hearing before this Court.   As an initial matter, all of Petitioner's claims except for one ineffective assistance of counsel argument were presented to the

22

state courts and rejected on the merits, either in the course of Petitioner's direct appeal or Petitioner's state habeas corpus proceeding.  Petitioner is not entitled to an evidentiary hearing in this Court on these claims. *See Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398-1401, 179 L.Ed.2d 557 (2011) (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by § 2254(d)(1)).   Federal habeas proceedings are not alternative forums for trying facts and issues which a petitioner did not establish at the state level. *Id.* at 1401.  Thus, Petitioner is not entitled to a evidentiary hearing on any of the claims that were litigated on the merits in Petitioner's direct appeal or state habeas corpus proceedings.

The failure of the state habeas court to furnish Petitioner with an evidentiary hearing does not deprive the state habeas court's factual findings and conclusions of law of the deference to which they are entitled under the AEDPA.  Petitioner had the opportunity to develop his claims before the state court through the provision of affidavits or sworn declarations and did so. *See Tercero v. Stephens*, 738 F.3d 141, 148-49 (5th Cir. 2013).

With respect to Petitioner's new claim, 28 U.S.C. § 2254(e)(2) restricts this Court's ability to hold an evidentiary hearing even when a claim has not been fully adjudicated on the merits by a state court. *See Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petitioner's factual allegations which, if true, would entitle the applicant to federal habeas relief.").  Petitioner's new assertion of ineffective assistance lacks any arguable merit because it is premised upon an erroneous construction of

applicable Texas law.  Consequently, Petitioner is not entitled to an evidentiary hearing on his new claim.

## F. CERTIFICATE OF APPEALABILITY

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("COA"). *Miller-El v. Johnson*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); 28 U.S.C. §2253(c)(2).  Likewise, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002). This Court is required to issue or deny a CoA when it enters a final order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S. Ct. 2562, 2569, 159 L.Ed.2d 384 (2004); *Miller-El v. Johnson*, 537 U.S. at 336, 123 S. Ct. at 1039.  The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim.   "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Johnson*, 537 U.S. at 338, 123 S. Ct. at 1040 (*quoting Slack v. McDaniel*,

529 U.S. at 484, 120 S. Ct. at 1604). *Accord Tennard v. Dretke*, 542 U.S. at 282, 124 S. Ct. at 2569.[31]

This Court has conducted a *de novo* legal analysis of Petitioner's ineffective assistance of counsel claims and finds that no reasonable jurist could find that Petitioner's Sixth Amendment rights have been violated.  Likewise, reasonable jurists could not disagree with the fact that the state habeas court's factual findings (which were reasonable in light of the evidence before the state court) foreclose several of Petitioner's claims herein.   Reasonable jurists could not disagree with the conclusions that: (1) the Texas appellate courts' rejection on the merits of Petitioner's Confrontation Clause claim (Petitioner's fourth and final claim herein) was fully consistent with clearly established federal law, and (2) adoption of the new rule advocated by Petitioner in his fourth claim herein is foreclosed by the non-retroactivity doctrine of *Teague v. Lane.*

Finally, this Court independently reviewed the entire record from Petitioner's trial, direct appeal, and state habeas corpus proceedings, and concludes that Petitioner's ineffective assistance claims fail to satisfy either prong of the *Strickland* test.  For the foregoing reasons, Petitioner is not entitled to a CoA on any of his claims herein.

## CONCLUSION

In light of the foregoing analysis,  it is hereby ORDERED that:

---

[31] In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484, 120 S. Ct. at 1604.

1.  All relief requested in Petitioner's federal habeas corpus Petition (Doc. No. 2), as supplemented by Petitioner's memorandum of law in support of petition (Doc.  no. 3) and Petitioner's reply to answer (Doc. No. 16. ), is **DENIED**.

2.  Petitioner's request for an evidentiary hearing is **DENIED**.

3.  Petitioner is **DENIED** a Certificate of Appealability on all his claims herein.

4.  All other pending motions are **DISMISSED** as moot.


SIGNED this 5th day of May, 2014.


_____

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE